610 A.2d 973

**Daniel J. PYSH and Janice L. Pysh, His Wife, Individually and on Behalf of all Others Similarly Situated, Appellants,**

**v.**

**SECURITY PACIFIC HOUSING SERVICE, a Delaware Corporation.**

Superior Court of Pennsylvania.

Argued Nov. 20, 1991.

Filed May 29, 1992.

---

66

Michael P. Malakoff, Pittsburgh, for appellants.

Mark D. Shepard, Pittsburgh, for appellee.

Before BECK, TAMILIA and HESTER, JJ.

BECK, Judge.

This case presents a single issue—whether a financing company's use of the "Rule of 78s" method of calculating the unearned finance charge to be rebated to the owner of a mobile home upon prepayment of his/her installment sales contract for the mobile home violates the Motor Vehicle Sales Finance Act. The trial court found that such a method of calculation does not violate the Act. Finding no error in the trial court's analysis, we affirm.

The issue arises in the context of an action commenced by appellants, Daniel J. and Janice L. Pysh, against appellee Security Pacific Housing Service, purportedly on behalf of the Pyshs and all purchasers of mobile homes who are or were liable under installment sales contracts with Security

Pacific pursuant to which the Rule of 78s could be used to calculate the amount of unearned finance charge to be rebated to the owner of the mobile home upon prepayment of the contract.

The Pyshs' complaint set forth two causes of action. In the first, they alleged a violation of the Motor Vehicle Sales Finance Act, tit. 69, §§ 601 *et seq.* (Purdon 1965 & Supp. 1991) (the "MVSFA"). In the second, they alleged a violation of the Unfair Trade Practices and Consumer Protection Law, tit. 73, § 201–1 et seq. (Purdon Supp.1991). However, both counts were based solely on the allegation that Section 623(G)(5) of the MVSFA prohibits Security Pacific's use of the Rule of 78s to calculate the amount of unearned finance charge to be refunded to the buyer of a mobile home who pays off his or her installment sale contract prior to the end of the term thereof. Section 623(G)(5) provides:

5. Mobile home installment contracts contracted for on or after the effective date of this amendatory act may be prepaid without any penalty or other charge for such prepayment at any time before the end of the period of the loan.

Specifically, the Pyshs alleged that they had entered into a contract with Pre–Owned Mobile Home Sales to purchase and finance a 1985 Skyline mobile home. They executed an installment sale contract which provided, *inter alia,* as follows:

PREPAYMENT: You may prepay the Total of Payments without prepayment penalty or premium. If you repay in full, whether in cash, upon sale of the Vehicle because of your default, by refinancing or for any other reason, you will receive a refund of unearned finance charge. The amount of finance charge we earn is determined by using the accounting method called the "Rule of 78's." However, you will not receive a refund if it is less than $1.00 or results in our earning a minimum finance charge of less than $10.00.

The contract designated Concord–Liberty Savings and Loan Association as the assignee, which received a security

interest in the Pyshs' mobile home. The Pyshs were later notified that their contract had been assigned to Security Pacific and that Security Pacific was therefore the new lienholder on their mobile home.

The Pyshs further alleged that they twice wished to prepay their mobile home installment contract and, therefore, requested payoff statements, first from Concord–Liberty and then from Security Pacific. In each instance, the payoff statement reflected a calculation of unearned finance charge pursuant to the Rule of 78s and, therefore, reflected a payoff amount of approximately $3,000 more than if the unearned interest had been calculated by the actuarial method. The Pyshs contend that this use of the Rule of 78s constitutes imposition of a prepayment penalty or charge in violation of Section 623(G)(5) of the MVSFA, that the contract wrongfully represents that the use of the Rule of 78s is permissible under Pennsylvania law, and that the appropriate method for calculating unearned finance charges on mobile homes is the actuarial method. Thus, their complaint claimed entitlement to both injunctive and monetary relief.

Security Pacific filed preliminary objections in the nature of a demurrer. Therein, Security Pacific alleged that use of the Rule of 78s was not violative of the MVSFA because both the language of Section 622 of the Act and the Pennsylvania Department of Banking regulations issued pursuant thereto specifically permitted the use of the Rule of 78s in calculating unearned finance charge rebates on mobile homes. Following argument, the trial court granted Security Pacific's preliminary objections and dismissed the Pyshs' complaint. This timely appeal followed.

■ On review of an order sustaining preliminary objections in the nature of a demurrer and dismissing a complaint, our review is plenary. We must determine if the trial court correctly determined that, taking as true all properly pleaded material facts and disregarding all pleaded conclusions of law, under no circumstances will the law permit recovery on the complaint. *Pawlowski v. Smorto,*

403 Pa.Super. 71, 588 A.2d 36 (1990); *Doe v. Dyer–Goode,* 389 Pa.Super. 151, 566 A.2d 889 (1989), *app. denied,* 527 Pa. 587, 588 A.2d 509 (1990).

At the outset, we must delineate those areas which are not in dispute in this appeal. First, as our standard of review indicates, we must accept as true all well-pleaded facts in appellants' complaint. Thus, we must accept, and Security Pacific does not argue to the contrary, that use of the Rule of 78s to calculate unearned finance charges does in fact result in a higher payoff obligation for a mobile home owner who wishes to prepay his installment sale contract than the actuarial method. This disparity occurs because use of the Rule of 78s in computing finance charge results in a greater accrual of the finance charge in the early months or years of the loan period. When a buyer attempts to prepay his or her loan, the financing company must compute how much is still owed on the loan, including all principal and finance charge, and then must rebate to the buyer, or apply as a credit to the amount owed, the amount of the finance charge not yet accrued as of the time of prepayment. Since the Rule of 78s accrues more of the finance charge early in the loan, or "up front," the amount of finance charge earned by the company early in the loan is higher. Therefore the amount to be rebated or credited to the buyer on prepayment will be lower. In contrast, under the actuarial method the finance charge accrues over the life of the loan more evenly, and the amount to be rebated or credited to the buyer on prepayment will be higher. *See generally Lanier v. Associates Finance, Inc.,* 114 Ill.2d 1, 101 Ill.Dec. 852, 499 N.E.2d 440 (1986) (explaining operation of Rule of 78s).

In this matter the parties agree that Section 623(G)(5), quoted above, prohibits imposition of a prepayment penalty or charge on prepayment of a mobile home installment sale contract. They also agree that Section 622 of the MVSFA authorizes the calculation of unearned finance charge rebates under motor vehicle installment sale contracts by use of the Rule of 78s. Section 622 states:

Refund for prepayment of contract

A. The buyer, notwithstanding the provisions of any installment sale contract, shall have the privilege of prepaying at any time all or any part of the unpaid time balance under an installment sale contract.

B. Whenever all of the time balance is liquidated prior to maturity by prepayment, refinancing or termination by surrender or repossession and re-sale of the motor vehicle, the holder of the installment sale contract shall rebate to the buyer immediately the unearned portion of the finance charge. Rebate may be made in cash or credited to the amount due on the obligation of the buyer.

C. The unearned finance charge to be rebated to the buyer shall represent at least as great a proportion of the total finance charge as the sum of the periodical time balances after the date of prepayment bears to the sum of all the periodical time balances under the schedule of payments in the original agreement:

Provided, however, The holder shall not be required to rebate any portion of such unearned finance charge which results in a net minimum finance charge on the contract less than ten dollars ($10.00); And provided further, the holder shall not be required to rebate any unearned finance charge when the amount due, computed as herein set forth, is less than one dollar ($1.00).

The parties agree that the computational method set forth in subsection C, *supra*, permits the use of the Rule of 78s in calculating the amount of the unearned finance charge to be rebated on prepayment. *See In re Jones*, 79 B.R. 233 (E.D.1987).

Against this backdrop, it is clear that the only question presented on appeal is how Sections 622 and 623(G)(5), when read together, are properly to be construed. In other words, this case presents a pure question of statutory construction.

Appellants argue that use of the Rule of 78s results in a lower rebate of unearned finance charge than does the

actuarial method, and that some courts have therefore viewed the Rule of 78s as effectively imposing a charge or penalty upon buyers who seeks to prepay their loans. *See, e.g., In re Jungkurth,* 74 B.R. 323 (E.D.Pa.1987).[1] Appellants thereby conclude that use of the Rule of 78s violates the MVSFA because section 623(G)(5) thereof prohibits a penalty or charge upon prepayment of a mobile home installment sale contract.

However, the question presented for our resolution is not simply whether the Rule of 78s might be seen as imposing a penalty or charge upon prepayment when looked at *in vacuo.* Rather, the question for us is whether the Rule of 78s should be viewed as imposing an impermissible charge upon prepayment in light of the language of Section 622. Our research has disclosed no Pennsylvania case addressing the interplay and proper construction of Sections 622 and 623(G)(5) of the MVSFA.[2]

Therefore, we engage in a *de novo* review of the statutory language and employ well-accepted general principles of statutory construction to construe the meaning of the MVFSA.

The two sections in question, section 622, permitting the use of the Rule of 78s, and 623(G)(5), prohibiting prepayment penalties, were enacted at different times. Section 622 was enacted as part of the original Act in 1949, whereas section 623(G)(5) was not enacted until 1978 as part of an amendment to the MVSFA. The two sections also have differing scopes of applicability. Section 623(G)(5) by its own terms is applicable only to mobile homes. Thus, while

1. In contrast, other courts have refused to characterize the Rule of 78s as imposing a penalty or charge and have permitted its use as a method of calculating unearned finance charges. *See, e.g., Lanier v. Associates Finance, Inc.,* 114 Ill.2d 1, 101 Ill.Dec. 852, 499 N.E.2d 440 (1986).

2. In *Livingston v. Vanguard Federal Savings Bank,* 386 Pa.Super. 496, 563 A.2d 175 (1989), a panel of this court reviewed a trial court order dismissing a complaint that raised a similar challenge to the use of the Rule of 78s. However, the court reversed the trial court on other grounds and declined to address whether use of the Rule of 78s results in payment of a prepayment penalty. *Id.,* 386 Pa.Superior Ct. at 499, 563 A.2d at 177 n. 3.

prepayment penalties or charges are not permitted as to mobile homes, there is no corresponding prohibition applicable to the prepayment of installment sale contracts on other motor vehicles within the coverage of the Act.

Section 622, on the other hand, does not contain any language limiting its applicability. It broadly addresses the rights of all "buyers" of "motor vehicles" pursuant to "installment sale contracts", as those terms are defined in section 603 of the Act. Thus, on its face, section 622 would appear to apply equally to mobile homes as to any other motor vehicle within the coverage of the Act.

■ Although at points in appellants' brief to this court there appears to be a suggestion that mobile homes are exempt from the coverage of section 622, we see no legislative intent to exclude mobile homes from section 622. The 1978 amendment that added section 623(G)(5) to the Act also added a definition of "mobile home." That definition, which states that "mobile homes" are "those vehicles defined as such in section 102 of Title 75 ...," clearly establishes mobile homes as simply one class of motor vehicles to which the Act applies. Although certain sections of the Act apply only to mobile homes (i.e. section 623(G)(5)), there is no suggestion anywhere in the Act that the general provisions relating to all motor vehicles are somehow inapplicable to mobile homes. Thus, based on the express language of the Act, section 622 applies equally to mobile homes.

■ The gravamen of appellants' argument is that when the legislature enacted section 623(G)(5), it evidenced an intent to prohibit *all* charges or penalties on prepayment of a contract on a mobile home. Since appellants characterize the use of the Rule of 78s as a "charge," then section 623(G)(5) should be read as prohibiting its use. Moreover, by appellants' logic, since section 623(G)(5) specifically applies to mobile homes and prepayment charges on mobile home contracts, appellants argue that section must be construed to predominate over section 622's provisions regarding the calculation of unearned finance charges generally.

Thus, appellants conclude, section 623(G)(5) should be viewed as effectively amending or carving out an exception to section 622 for mobile homes.

We disagree. If we were to accept appellants' argument, we would necessarily have to find a basic inconsistency between the two sections of the Act. We would have to determine that whereas section 622 permits the use of the Rule of 78s, nevertheless section 623(G)(5) forbids its use for one class of motor vehicles, i.e. mobile homes. However, we see no inconsistency between these sections and find that they are easily reconciled.

Section 622 deals specifically with the permissible manner in which a finance company can calculate unearned finance charges to be rebated to a motor vehicle owner upon prepayment. Thus, it concerns how a finance company can determine how much owners of the vehicles still owe on their installment sale contracts at the time of prepayment. In contrast, section 623(G)(5) deals specifically with whether additional charges or penalties may be imposed upon prepayment of mobile homes. As the trial court concluded, one section is about unearned finance charges and the other is about the separate subject of charges and penalties imposed for the privilege of prepayment. The two sections can be construed consistently by reading section 622 as permitting the use of the Rule of 78s to calculate the rebate of unearned finance charge and reading section 623(G)(5) as prohibiting the imposition of any separate penalty or charge simply for the privilege of prepaying.

In adopting this construction, we follow the clear mandate of the Statutory Construction Act, which provides:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the

General Assembly that such general provision shall prevail.

1 Pa.Cons.Stat.Ann. § 1933 (Purdon's Supp.1991).

Although appellants focus our attention on the latter portion of this section and contend that the special provision regarding prepayment penalty found in section 623(G)(5) must prevail over the general provision found in section 622, we focus first on the beginning of the section which directs that we give effect to both sections if possible. As we have demonstrated above, we may easily construe these two sections so that logical effect may be given to both simply by delineating the two *different* subjects they address.

Moreover, as appellees point out, we must take cognizance of the fact that section 623(G)(5) was added to the MVSFA in an amendment thereto in 1978. The Statutory Construction Act also provides guidance in construing amendatory statutes, as follows:

Whenever a section or part of a statute is amended, the amendment shall be construed as merging into the original statute, become a part thereof, and replace the part amended and the remainder of the original statute and the amendment shall be read together and viewed as one statute passed at one time; but the portions of the statute which were not altered by the amendment shall be construed as effective from the time of their original enactment, and the new provisions shall be construed as effective only from the date when the amendment became effective.

*Id.* at § 1953.

Pursuant to this directive, we must construe the MVSFA in its present form as one integrated statute, incorporating the amendments passed in 1978 into the original statute. *See Snyder v. Commonwealth, Dept. of Transportation,* 64 Pa.Commw. 599, 441 A.2d 494 (1982). In addition, we must not construe the amendment to have altered any portions of the statute that the amendatory act did not address. Thus, although the addition of section

623(G)(5) clearly added a prohibition on prepayment penalties or charges as to mobile homes, it cannot be construed to have *sub silentio* also amended section 622 insofar as it addresses the permissible method of calculating unearned finance charge. Nothing in 623(G)(5) expressly or impliedly makes reference to this specific subject. If the legislature wished to address this subject, and carve out an exception to the provision addressing it found in section 622, it could have done so by amending section 622 in the 1978 amendatory act.

Our analysis of this issue is further supported by reference to an interpretive regulation issued by the Department of Banking, which is charged with administration and enforcement of the MVSFA, shortly after enactment of the 1978 amendments to the MVSFA. In this regulation, the Department of Banking reconciled section 622 and the new section 623(G)(5) as follows:

> (a) Installment sales contracts executed on or after July 1, 1978 [the effective date of section 623(G)(5)] may be prepaid in full without a penalty or other charge at any time before the end of the period of the loan, and the buyer will be entitled to a refund of the unearned finance charge under Section 22 of the act (69 P.S. § 622).

10 Pa.Code § 55.3 (1986).

Although an interpretive regulation issued by an administrative agency is in no way controlling, nevertheless such regulations are accorded substantial weight and are to be disregarded only where they are clearly inconsistent with the statute being construed. *Chappell v. Pennsylvania Public Utilities Comm.*, 57 Pa.Commw. 17, 425 A.2d 873 (1981). Such regulations are accorded particular weight when they are issued by administrative agencies charged with administering complex areas, such as banking and finance, as to which the agency has particular expertise. *See Skolnick v. Ford Motor Credit Co.*, 319 Pa.Super. 83, 465 A.2d 1064 (1983), *app. dismissed*, 505 Pa. 608, 482 A.2d 1275 (1984) (court defers to Department of Banking inter-

pretive regulation in determining whether finance charge under MVSFA can be calculated by "add-on" method); *Beneficial Consumer Discount Co. v. Whitesell*, 45 Pa. Commw. 156, 404 A.2d 794 (1979).

Instantly, we find that the above-quoted Department of Banking regulation appropriately views sections 622 and 623(G)(5) as addressing separate subjects and as presenting no irreconcilable conflict. Thus, although no prepayment penalty or charge may be imposed upon prepayment of a mobile home contract, the finance company may calculate the amount of unearned finance charge to be rebated in accordance with section 622, i.e. by means of the Rule of 78s.

We are cognizant of the fact that use of the Rule of 78s to calculate unearned finance charge does result in a lower rebate to the consumer than would use of the actuarial method and that this aspect of the Rule of 78s had led some courts to view it as an unfair calculation method. Under traditional analysis we must conclude that the legislature intended this result. If the legislature should determine it does not wish the Rule of 78s to be applicable to mobile home owners, then the legislature can take appropriate action. In the meantime we are bound by the existing legislation as interpreted by established principles of statutory construction.

Order affirmed.