J-E03007-18

2019 PA Super 13

| PITTSBURGH LOGISTICS SYSTEMS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | |
| | : | No. 134 WDA 2017 |
| BEEMAC TRUCKING, LLC AND BEEMAC LOGISTICS, LLC | : | |

Appeal from the Order December 22, 2016
In the Court of Common Pleas of Beaver County Civil Division at No(s):
No. 11571-2016

BEFORE: GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,

LAZARUS, J., OTT, J., STABILE, J., DUBOW, J., and MURRAY, J.

DISSENTING OPINION BY BOWES, J.:         **FILED JANUARY 11, 2019**

I respectfully dissent. As I would hold that the no-hire provision at issue

is enforceable under Pennsylvania law, I would reverse the trial court's order

denying the petition for a preliminary injunction filed by Pittsburgh Logistics

Systems, Inc. ("PLS") against BeeMac Trucking, LLC, and BeeMac Logistics,

LLC ("BeeMac").[1]

_____

[1] The record contains reference to a company named Hybrid Global Logistics ("Hybrid"), which is not a party to this suit. Hybrid purportedly hired two of the disputed employees, and is supposedly owned by one of those employees and BeeMac Trucking, LLC. These allegations raise questions of fact not decided by the trial court, and thus, the question of Hybrid's affiliation with BeeMac and PLS is not presently before us.

At the outset, I observe that, of the six elements a party must establish to obtain a preliminary injunction,[2] the only one at issue herein is the fourth prong. PLS was required to establish that the activity that it sought to restrain was actionable, that its right to relief was clear, and that the wrong was manifest, or, in other words, show that it was likely to prevail on the merits. *Warehime v. Warehime*, 860 A.2d 41, 46-47 (Pa. 2004). Hence, my analysis is limited to a discussion of the fourth prong as it relates to the no-hire provision.

_____

[2] The six elements are:

> 1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) that the activity that its seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; 5) that the injunction it seeks is reasonably suited to abate the offending activity; and, 6) that a preliminary injunction will not adversely affect the public interest.

*Warehime v. Warehime*, 860 A.2d 41, 46-47 (Pa. 2004) (cleaned up). That the trial court found that PLS established the other five prongs is confirmed by its decision to grant a preliminary injunction as to the non-solicitation provision contained in PLS's contract with BeeMac, thus preventing BeeMac from soliciting PLS customers. The difference in the trial court's decisions appears to have turned upon its which determination that the non-solicitation provision was a reasonable restraint on trade, while the no-hire clause was not. Trial Court Opinion, 12/22/16, at 11-12.

It is undisputed that the laws of this Commonwealth are silent as to the enforceability of a no-hire provision, such as the condition provided in § 14.6 of BeeMac's contract with PLS ("MCSC").[3]  Notwithstanding the lack of authority on point, I would hold that PLS has established a likelihood of success on the merits because I am persuaded that the no-hire provision is valid and enforceable.

"The legal effect or enforceability of a contract provision presents a question of law accorded full appellate review and is not limited to an abuse of discretion standard." ***Midwest Fin. Acceptance Corp. v. Lopez***, 78 A.3d 614, 624 (Pa.Super. 2013).  As such, our scope of review of the question is plenary.  ***Mace v. Atl. Ref. Mktg. Corp.***, 785 A.2d 491, 494 n.5 (Pa. 2001).

Generally speaking, Pennsylvania law favors contracts entered into at arm's length between sophisticated parties.  ***John B. Conomos, Inc. v. Sun Co., Inc. (R&M)***, 831 A.2d 696, 708 (Pa.Super. 2003) ("Absent fraud or

---

[3] Section 14.6 provides as follows:

> [BeeMac] agrees that, during the term of this Contract and for a period two (2) years after the termination of this Contract, neither [BeeMac] nor any of its employees, agents, independent contractors or other persons performing services for or on behalf of [BeeMac] in connection with [BeeMac's] obligations under this Contract will, directly or indirectly, hire, solicit for employment, induce or attempt to induce any employees of PLS or any of its Affiliates to leave their employment with PLS or any Affiliate for any reason.

MCSC, 8/30/10, at §  14.6.

unconscionability, courts should not set aside terms on which sophisticated parties agreed."). Here, the record suggests that PLS and BeeMac engaged in arm's length negotiations and exchanged valuable consideration in arriving at the agreement set forth in the MCSC. The record is devoid of allegations that PLS perpetrated a fraud or that the terms of the MCSC were unconscionable. Rather, the record reflects that BeeMac appreciated the consequences of entering into the MCSC with PLS, including its promise to refrain from hiring any PLS employee during the term of the contract, and for two years following its termination. Accordingly, Pennsylvania law generally supports a finding that the agreement is enforceable on its face.

The question thus becomes whether § 14.6 is unenforceable as contrary to another aspect of Pennsylvania law. In resolving the issue, this Court must examine the provision actually before us, namely, BeeMac's agreement not to hire PLS's employees during the performance of the contract or for two years afterwards. This is a no-hire provision that binds BeeMac, not a non-compete clause binding PLS's employees. In my view, the majority errs in conflating the two, as there is no basis in Pennsylvania law for treating a no-hire provision as a restrictive covenant between an employer and an employee.

By way of background, in a separate action not implicated in this appeal, PLS sued former employees for alleged violations of non-compete agreements. The trial court held the provisions to be unenforceable as overly-broad, as they were unlimited in geographic scope. **See** Trial Court Opinion,

12/22/16, at 8, 10. Further, the trial court declined to modify the scope of the provisions, concluding that PLS had unclean hands, as the overbreadth evidenced an intent to oppress the employees. *Id*. at 6-8.

The majority seizes upon these holdings to find that "[i]t would be incongruous to strike the employees' restrictive covenant, finding PLS to have unclean hands, yet allow PLS to achieve the same result via a contract between companies." Majority Opinion at 9. The majority opines that the no-hire provision "is similarly overbroad, preventing any PLS employee from working for any PLS customer." *Id*. The majority further confuses the issues by relying upon a New Mexico federal district court's discussion of a Texas court's invalidation of an agreement between the buyer and seller of a company that included a provision purporting to prevent employees of the company from participating in a competing business, although the employees were not parties to the contract. *Id*. at 10 (quoting ***Richards Energy Compression, LLC v. Dick Glover, Inc.***, 2013 WL 12147626 (D.N.M. Sept. 16, 2013) (discussing ***Texas Shop Towel v. Haire***, 246 S.W.2d 482, 484 (Tex.Civ.App.-San Antonio 1952)).

PLS's non-compete agreements with its individual employees have absolutely no relevance in determining the enforceability of BeeMac's contractual obligation not to hire PLS employees. The provisions are in separate agreements, with distinct rights and responsibilities, made by different parties for different purposes. This is not at all akin to the Texas

case above in which a company made an agreement to bind individuals who were not parties to the contract. Further, the no-hire provision does not prevent any PLS employee from working for any PLS customer as the majority suggests; rather, it prevents only the hire of PLS employees by BeeMac, and thus is far narrower in scope than the non-compete agreements included in the employees' contracts. The majority's apparent assumption that such no-hire provisions are contained in every agreement PLS reaches with a new customer is simply not supported by the record, and is not a proper basis for consideration of the issue before us.

Accordingly, it is inappropriate to construe § 14.6 at issue as a back-door restrictive covenant through which an employer signs away rights of its employees without supplying consideration. The no-hire provision does not restrict the employees' actions, but rather is a concession from BeeMac that, in exchange for its access to PLS's specialized industry knowledge and contacts through PLS's employees, BeeMac would not thereafter appropriate those employees and obviate the need for PLS's services. BeeMac's contract with PLS does nothing to restrict PLS's employees from seeking employment with any other company.

The proper analysis of the issue in this appeal is whether the no-hire provision in the PLS-BeeMac contract is a reasonable restraint upon trade. No-hire agreements have been upheld under such scrutiny in other jurisdictions. *See*, *e.g.*, ***Ex parte Howell Engineering and Surveying,***

*Inc.*, 981 So.2d 413 (Ala. 2006), and *H & M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc.*, 805 N.E.2d 1177 (Ill. 2004)).

I find particularly persuasive the reasoning of the United States District Court for the Middle District of Pennsylvania's decision in *GeoDecisions v. Data Transfer Solutions, LLC*, 2010 WL 5014514 (M.D.Pa. December 3, 2010).[4] In that case, the district court applied Pennsylvania state law in granting a motion for a preliminary injunction after upholding the validity of a no-hire provision. The language of that agreement, in a contract between competitors who teamed up for a project, was as follows: "For a period of two (2) years from the date of this Agreement, neither party shall solicit for employment or employ any person employed by the other party, or otherwise encourage any person to terminate employment with such party." *Id*. at *2. The defendant opposed the motion for a preliminary injunction, *inter alia*, on the basis that the plaintiff was unlikely to proceed on the merits because the no-hire provision was invalid. *Id*. at *3.

> In considering the arguments, the court began by noting that
>
> [o]ther courts considering the issue have found that although such no-hire provisions do impact an employee's ability to obtain future employment, they are not properly characterized as covenants not to compete or restrictive covenants between employer and employee. Rather, agreements containing such provisions are construed as contracts in restraint of trade.

---

[4] Although the decisions of the federal district courts are not binding on this Court, we may "utilize the analysis in those cases to the extent we find them persuasive." *Umbelina v. Adams*, 34 A.3d 151, 159 n.2 (Pa.Super. 2011) (citation omitted).

*Id*. (citations omitted). The court then acknowledged that restraints on trade are generally void as against public policy; however, such an agreement will be deemed valid under Pennsylvania law if "(1) it is ancillary to the main purpose of a lawful transaction; (2) it is necessary to protect a party's legitimate interest; (3) is supported by adequate consideration; and (4) it is reasonably limited in both time and territory." *Id*. at *4 (citing ***Volunteer Firemen's Ins. Servs., Inc. v. CIGNA Prop. & Cas. Ins. Agency***, 693 A.2d 1330, 1337 (Pa.Super. 1997)).

The court held that the no-hire provision was ancillary to a lawful agreement, as "the purpose of the Agreement was not to restrict a corporation's ability to hire a competitor's employees. Rather, the purpose of the arrangement was to ensure a productive temporary cooperative relationship." *Id*. at *5. The court next determined that the restriction was necessary to protect a legitimate interest, as "corporations have a legitimate interest in ensuring that they are not treated as an involuntary and unpaid employment agency for competitors to whom they have exposed themselves and their personnel." *Id*. (internal quotation marks omitted). Consideration was present, in that "[b]oth parties promised that as they engaged in the development of a mutually beneficial relationship they would bind themselves by limiting the use of any information obtained in the course of the discussions and by prohibiting the hiring of one another's employees." *Id*. at *6 (internal quotation marks omitted). Finally, the court held that the two-year restriction

was not overbroad despite its lack of geographical limitation, reasoning as follows:

> The agreement is quite limited as to the parties here. The Agreement only prohibits the hiring individuals of one corporation. Neither party has put forward convincing evidence that the inability to hire the other's employees has impaired its ability to fill open positions. . . . In addition, it cannot be said that the provision interferes with the right of the parties' employees from seeking work, as they are only prohibited from being employed by one firm. . . . Where the parties are both sophisticated and in equal bargaining positions, where the provision is clear and mutually binding, and where the provision does not impose an overly broad restraint, the Court is unwilling to declare the provision unreasonable because one party determines *ex ante* that the bargain struck was not desirable.

*Id*. at \*7 (citation omitted).

The only relevant distinction I discern between the no-hire provision at issue in ***GeoDecisions*** and that of the instant case is that the one in ***GeoDecisions*** was mutually-applicable while the instant provision was not. However, that difference does not warrant a different result. I would hold that the restraint on trade presented in § 14.6 of the MCSC is a reasonable, and thus valid and enforceable, restraint upon trade for the reasons discussed by the court in ***GeoDecisions***.

I further disagree with the majority's conclusion that the no-hire provision violates public policy. Our Supreme Court has cautioned against finding a contract violates public policy unless that violation is clear:

> [p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify

- 9 -

the invalidation of a contract as contrary to that policy . . . . Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts . . . contrary to public policy. The courts must be content to await legislative action.

*Safe Auto Ins. Co. v. Oriental-Guillermo*, 170 A.3d 1170, 1175 (Pa.Super. 2017) (citing *Hall v. Amica Mut. Ins. Co.*, 648 A.2d 755, 760 (Pa. 1994)).

The majority agrees with the trial court's determination that the no-hire provision violated public policy since it "prevented non-signatories, PLS employees, from exploring alternate work opportunities in a similar business." Majority Opinion at 11. However, as discussed above, BeeMac received valuable consideration for its promise not to hire PLS employees, thereby limiting its own pool of applicants from which it could hire. Although this agreement had an indirect effect on those PLS employees seeking employment away from PLS, that effect, insofar as the MCSC is concerned, prohibited those employees only from seeking employment with BeeMac and its affiliates who deal with PLS. I discern no strong public policy against such a limitation, and I suggest that the dearth of Pennsylvania statutory or case law invalidating such an agreement supports the conclusion that it does not violate "dominant public policy." *Id*.

We have long held that the purpose of injunctive relief is "to prevent irreparable injury or gross injustice by preserving the *status quo* as it exists or as it previously existed before the acts complained of in the complaint.

- 10 -

***Ambrogi v. Reber***, 932 A.2d 969, 974 (Pa.Super. 2007) (citation omitted). Here, PLS made a showing of irreparable harm caused by BeeMac allegedly hiring its former employees, which PLS trained and developed. By denying PLS's petition for injunctive relief, the trial court effectively permitted BeeMac to enjoy the benefit of its purported breach while the issue proceeded through litigation. In the interim, BeeMac is free to leverage the specialized knowledge that PLS's former employees acquired while under its employment. Even if PLS were to succeed on the merits following trial, BeeMac still gained a competitive advantage. Such an outcome fails to maintain the *status quo*, and falls far short of satisfying the spirit of fairness underlying the doctrine.

Therefore, I respectfully dissent.

Judge Mary Murray joins this dissenting opinion.