563 A.2d 175

**Earl B. LIVINGSTON and Rebecca J. Livingston, His Wife, Individually and on Behalf of all Others Similarly Situated, Appellants,**

v.

**VANGUARD FEDERAL SAVINGS BANK.**

Superior Court of Pennsylvania.

Argued June 8, 1989.

Filed Sept. 8, 1989.

Michael P. Malakoff, Pittsburgh, for appellants.

Neal Brendel, Pittsburgh, for appellee.

Before CAVANAUGH, DEL SOLE and MONTGOMERY, JJ.

DEL SOLE, Judge:

Mr. and Mrs. Livingston, as representatives of a class, have taken this appeal from a trial court order sustaining the preliminary objections filed by Vanguard Federal Savings Bank. In so ruling the trial court dismissed Appellants' complaint which alleged that Vanguard's method of computing interest on prepayments made on mobile home loans was not permitted by Pennsylvania law under 69 Pa.S.A. § 623 G.5. The trial court accepted Vanguard's position that the Pennsylvania statute, which prohibits the imposition of prepayment penalties on mobile home installment contracts, was preempted by federal law. We reverse.

The Livingstons initiated this action after learning the amount due to pay-off a loan on a mobile home which they had purchased approximately 4½ years earlier. The sales agreement made between the Livingstons and Keystone Trailer, Inc. declared that Keystone was assigning the contract to Vanguard who was providing the funding to the Livingstons.[1] The contract provided that the Livingstons were financing $26,300.00 at a rate of 14% for 15 years. It also stated that the finance charges earned by Vanguard were to be calculated using the accounting method known as the "Rule of 78s". After making payments for 4½ years, the Livingstons informed Vanguard that they would like to pay-off the balance of their loan. Vanguard notified them that the pay-off figure, calculated as described in the contract, was $27,002.58, approximately $700.00 more than the principal amount of the Livingstons' loan.

---

1. The effect of this assignment will not be discussed in view of our determination that Vanguard remains subject to Pennsylvania law regarding prepayment penalties for mobile home installment contracts.

Alleging that this method of calculation resulted in a prepayment penalty as prohibited by 69 Pa.S.A. § 623,[2] the Livingstons as representatives of a class sought to have the court enter an award of damages in their favor and issue an injunction against Vanguard.[3] Vanguard then filed preliminary objections contending that this statutory provision was preempted by federal law governing the operation of Vanguard, a federal savings bank. The trial court accepted Vanguard's position that Congress evidenced an intent to preempt state law on this subject by means of its extensive regulation in this area. The court also ruled that this state law directly conflicted with 12 U.S.C. § 1464(a), a regulation issued by the Federal Home Loan Bank Board (the Board) under the authority granted it by the Home Owners' Loan Act of 1933, (HOLA), 12 U.S.C. § 1461 *et seq.*

Pre-emption may be either expressed or implied by Congress. *Toolan v. Trevose Federal Savings and Loan Ass'n*, 501 Pa. 477, 462 A.2d 224 (1983), *citing Jones v. Rath Packing Co*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977), rehearing denied 431 U.S. 925, 97 S.Ct. 2201, 53 L.Ed.2d 240 (1977) "[W]hen Congress has unmistakably ... ordained, ... that its enactments alone are to regulate a part of commerce, state laws regulating that aspect of commerce must fall. This result is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Lukus v. Westinghouse Electric Corp.*, 276 Pa.Super. 232, 419 A.2d 431 at 438, (1980) *citing Jones v. Rath Packing Co, supra.* Whether examining explicit language or the structure and purpose of a federal scheme of regulation, a court must proceed with caution. "[I]t must

**2.** 69 P.S. § 623 G.5. provides in relevant part:
Mobile home installment contracts contracted for on or after the effective date of this amendatory act may be prepaid without any penalty or other charge for such prepayment at any time before the end of the period of the loan.

**3.** The trial court did not consider the question of whether calculations of interest which are done by the "Rule of 78s" result in the payment of a prepayment penalty, and we likewise do not address this question for purposes of this appeal.

start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Lukus v. Westinghouse Electric Corp., supra,* quoting *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978), *quoting Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). This assumption was created to ensure that "the federal-state balance, . . . will not be disturbed unintentionally by Congress or unnecessarily by the courts." *Lukus v. Westinghouse Electric Corp., supra, quoting, Jones v. Rath Packing Co., supra,* 430 U.S. at 525, 97 S.Ct. at 1409.

In this case the trial court found that preemption could be inferred since Congress had given the Board sufficient authority to entirely dispute state law which would purport to regulate the operation of a federal association. In support of its ruling the trial court cited a federal regulation which provides:

> The regulations in this Part 545 are promulgated pursuant to the plenary and exclusive authority of the Board to regulate all aspects of the operations of Federal associations, as set forth in section 5(a) of the Home Owners' Loan Act of 1933, 12 U.S.C. 1464, as amended. This exercise of the Board's authority is preemptive of any state law purporting to address the subject of the operation of a Federal association.

12 C.F.R. 545.2

■ It may be inferred that Congress intended to supersede state law altogether in a particular field where the scheme of federal regulation is so pervasive that it can be reasonably inferred that Congress left no room for the State to supplement it. *Fidelity Federal Savings and Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Such an inference may also be made where the federal interest in a field is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject or where the "object

sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose." *Id.* *Rice v. Santa Fe Elevator Corp., supra,* 331 U.S. at 230, 67 S.Ct. at 1152.

In *Fidelity Federal, supra,* the Supreme Court was asked to consider whether a Board regulation regarding due-on-sale clauses pre-empted conflicting state law. The Court recounted that the Board, an independent federal regulatory agency, was authorized under the provisions of HOLA to promulgate regulations governing the powers and operation of every federal savings and loan association from its cradle to its corporate grave. 458 U.S. 141, at 144, 102 S.Ct. at 3018; *People v. Coast Federal Savings & Loan Ass'n.,* 98 F.Supp. 311, 316 (S.D.Cal.1951). Although the court acknowledged that Congress did not express any limits on the Board's authority to regulate the lending practices of federal savings and loans, *Fidelity Federal, supra,* 458 U.S. at 160–61, 102 S.Ct. at 3026, Justice O'Connor in a Concurring Opinion wrote: "I join in the Court's opinion but write separately to emphasize that the authority of the Federal Home Loan Bank Board to pre-empt state laws is not limitless. Although Congress delegated broad power to the Board ... it is clear that HOLA does not permit the Board to pre-empt the application of all state and local laws to such institutions." *Id.* 458 U.S. 171, 102 S.Ct. at 3032. Further other courts have refused to find that Congress has occupied the entire field of federal savings and loan associations. *See Departmento de Asuntos del consumidor v. Oriental Federal Savings Bank,* 648 F.Supp. 1194 (D.P.R.1986) (where court recognized local law setting maximum interest rates for retail installment contracts); *Ford Motor Co. v. Insurance Comm'r of the Commonwealth of Pennsylvania,* 874 F.2d 926, 940 (3d Cir.1989) (where court declined to rule that by the Board's regulations, "Congress left no room for supplementary state regulation.")

We too conclude that Congress did not intend to displace state law entirely in this area. Although the broad

scope of the Board's regulations can be readily appreciated, we conclude that absent specific provisions detailing the pre-payment interest charges which federal savings and loans may charge on mobile home installment contracts, the Commonwealth of Pennsylvania was free to limit those charges. However, it is Vanguard's position that the Board has expressly addressed the area of pre-payment charges which may be accessed on a mobile home loan. The trial court accepted this claim and ruled that the Pennsylvania statute directly conflicted with the federal regulation, therefore federal preemption must be upheld. We recognize that a federal regulation has no less pre-emptive effect than a federal statute, *Fidelity Federal, supra,* 458 U.S. at 153, 102 S.Ct. at 3022, however, we must dismiss this preemption argument simply because the Pennsylvania statute is not in direct conflict with any federal regulation.

The Pennsylvania statute in question permits mobile home installment contracts to be prepaid without any penalty or other charge. 69 P.S. § 623 G. 5. Vanguard claims that this statute conflicts with 12 C.F.R. § 545.34(c) which provides:

Limitations for *home loans* secured by borrower-occupied property.

(c) Loan, payments and prepayments. Except for loans to natural persons secured by borrower-occupied property and on which periodic advances are being made, payments on the principal indebtedness *of all loans on real estate* shall be applied directly to reduction of such indebtedness, but prepayments made on an installment loan may be reapplied from time to time wholly or partly to offset payments which subsequently accrue under the loan contract. Subject to the disclosure provisions of § 545.-33(f)(2), an association may impose a penalty on prepayment of a loan as provided in the loan contract....

12 C.F.R. § 545.34(c) (emphasis added).

The trial court accepted Vanguard's position that this regulation covers the subject of prepayment charges on the sale of a mobile home despite Appellants' contention that

this regulation deals solely with prepayment charges on "home" loans which do not include mobile homes. Vanguard supports it interpretation by reference to 12 C.F.R. § 555.17 which further details the provisions of § 545.34(c) and which uses the general term "loans" rather than "home loans" to describe § 545.34(c)'s application. Section 555.15 provides:

> Section 545.34(c) makes clear that, with the exception of certain instances enumerated therein, the charging of a prepayment penalty is a matter of contract between a Federal association and a borrower, and that the borrower may wholly or partly prepay the loan without penalty unless the loan contract contains an express provision imposing a prepayment penalty. Thus, in view of the controlling Federal regulation, a Federal association may include a prepayment provision in the loan contract up to the maximum limitation of § 545.34(c) regardless of conflicting State law which sets a lower limit or imposes a different type of prepayment penalty, but it may not charge prepayment penalty exceeding the limit in § 545.-34(c) even if State law allows a higher charge.

12 C.F.R. § 555.15.

Although it is true that this interpretative section uses the general word "loan" in reference to the provisions of § 545.34(c), the actual language contained in § 545.34(c) must control its application. The heading to § 545.34 is titled "Limitations for home loans. . . ." The term "home loan" is again contained in the provision of subsection (c) where it states: "Notwithstanding the above, for any home loan . . ." The definitional section of the regulations define the term "Home" as: "Real estate comprising a single-family dwelling(s) or a dwelling unit(s) for four or fewer families in the aggregate." 12 C.F.R. § 541.14. Reference to real estate is also found within the regulation itself: "payments on the principal indebtedness of all loans on real estate." 12 C.F.R. § 545.34(c). Further, § 545.34(c) refers to certain disclosure provisions found in § 545.33(f)(2). This regulation requires disclosure material to be provided to an appli-

cant including the amount of the charge or prepayment penalty which may be imposed or the manner in which it is to be determined. The disclosure is required for "all *home* loans secured by borrower-occupied property." 12 C.F.R. 545.33(f) (emphasis added.)

Vanguard is unable to point to any case which applies § 545.34(c) to a mobile home sale. The language of this regulation speaks only to home loans, which are loans for real estate. A mobile home does not fit into this category. The term "loan" cannot be read apart from the word "home" in the context of § 545.34(c). The regulations promulgated by the Board do contain a specific section addressing mobile homes entitled "Manufactured home financing." [4] § 545.45. However, this section makes no reference to prepayment charges. Our interpretation of § 545.34(c) as applying only to "home loans" is also bolstered by a reading of certain provisions of HOLA, the act responsible for vesting the Board with the authority to administer its provisions through the issuance of regulations and rules. *Fidelity Federal, supra,* 458 U.S. at 144–45, 102 S.Ct. at 3018. This Act grants Associations the ability to "deal" with certain enumerated loans. 12 U.S.C. § 1464(c). Among the investments which are permitted are "Real property loans." These are defined as: "Loans on the security of liens upon residential or nonresidential real property ..." 12 U.S.C. § 1464(c)(1)(B). Mobile homes loans are not covered in this section, instead they are addressed in a separate section which addresses investments in personalty. 12 U.S.C. § 1464(c)(2)(A) permits investments, limited by certain percentage of an association's assets, for personalty which is defined as: "Investments in

---

**4.** The term manufactured home is defined as

"a structure, transportable in one or more sections, which, in the traveling mode, is eight body feet or more in width or forty body feet or more in length, or, when erected on site, is three hundred twenty or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air-conditioning, and electrical systems contained therein...."

42 U.S.C. § 5402(6).

tangible personal property including, without limitation, vehicles, *manufactured homes,* machinery equipment, or furniture for rental or sale...." (emphasis added.)

Based upon a reading of the language of § 545.34(c), the related regulations and the provisions of HOLA, we conclude that the trial court erred in finding that, in direct contrast to the Pennsylvania statute, the Board expressly permitted a federal association such as Vanguard to provide a prepayment penalty provision in its loan contracts for the sale of mobile homes. Absent such an express provision, we conclude that the Pennsylvania statute prohibiting the charge of a prepayment penalty on a mobile home installment contract, is not preempted by federal law.

In support of their argument that the Pennsylvania statute has not been preempted, Appellants' make one final claim which, when examined, does not alter the outcome of this case or our analysis. Appellants contend that the Board has expressly authorized the states to enact laws limiting prepayment charges which are designed to protect borrowers. *See* 12 C.F.R. § 590.3(c). The regulations found at § 590 are issued under section 501 of the Depository Institutions Deregulation and Monetary Control Act of 1980, (DIDMCA), Pub.L. 96–221, 94 Stat. 132, 161. Unlike the regulations under HOLA, which govern federally chartered savings and loan associations, the regulations under the DIDMCA are applicable to "federally-related residential mortgage loans". 12 C.F.R. § 590.1(b). Further, a federally related loan for the purchase of a residential manufactured home is required under these regulations to contain certain consumer safeguards. 12 C.F.R. § 590.3(a)(iii). It is undisputed that the loan at issue did not contain each of these safeguards. *See* 12 C.F.R. § 590.4. Thus, the language in § 560.3(c) permitting states to limit prepayment charges is inapplicable to the instant case.

In conclusion we find the trial court erred in sustaining Vanguard's preliminary objections. We reverse the trial court's order and remand this case for further proceedings. Jurisdiction is relinquished.