884 A.2d 1224

Nancy HEIST

v.

EASTERN SAVINGS BANK, FSB.

No. 1949, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Oct. 12, 2005.

Scott C. Borison (Douglas B. Bowman, Legg Law Firm, LLC, on brief), Frederick, for appellant.

Jonathan E. Claiborne (Whiteford, Taylor & Preston, LLP, on brief), Baltimore, for appellee.

Panel MURPHY, C.J., DAVIS, CHARLES E. MOYLAN, JR. (retired, specially assigned), JJ.

DAVIS, J.

Appellant, Nancy Heist, borrowed $141,500 from appellee, Eastern Savings Bank, FSB and, in a separately-signed addendum, appellant agreed that, if she fully repaid the loan within five years, she would incur a prepayment penalty. Appellant did prepay the loan, and, under the terms of her agreement, she was charged $9,531.97 for doing so.

Appellant filed suit in the Circuit Court for Frederick County, seeking a refund of the penalty and other relief. Upon appellee's motion,[1] the circuit court dismissed the complaint. Appellant noted an appeal and presents two questions for our review, which we have consolidated into one:

> Did the circuit court err in concluding that the Note included a prepayment penalty and, therefore, dismissing appellant's complaint for failure to state a claim?

We shall affirm the judgment.

## BACKGROUND

The Note that appellant signed includes two provisions key to our discussion. First, in paragraph 11, "APPLICABLE

---

1. Appellee recited the following in its Motion:

### MOTION TO DISMISS

The Defendant, Eastern Savings Bank, fsb [sic], by its attorneys, moves this Court to dismiss with prejudice the claims filed against it by the [Appellant], Nancy Heist, and says:

1. The [Appellant] has filed a claim against the [Appellee] alleging that the [Appellee] wrongfully assessed penalties against the [Appellant] for prepayment of a mortgage provided to her by the [Appellee].

2. [Appellant]'s alleged claims are preempted by Federal law.

3. Under Federal law, prepayment penalties are expressly allowed, and Congress has preempted all state law regarding the lending activities of federal savings banks such as the [Appellee].

4. Even if the state law which the [Appellant] asserts that the [Appellee] has violated is not wholly preempted by Federal law, the Federal law clearly overrides any provision of the state law which conflicts with the purposes of the Federal law.

5. The [Appellant] has failed to state a cause of action upon which relief can be granted, and the [Appellee] is entitled to judgment as a matter of law.

WHEREFORE, for all the foregoing reasons and as is more fully set forth in the Memorandum filed in Support of this Motion to Dismiss, the [Appellee] moves this Court to dismiss with prejudice the [Appellant]'s claims against the [Appellee].

LAW," the Note states: "This Note shall be governed by the provisions of Subtitle 10 of Article 12 of the Commercial Law Article of the Annotated Code of Maryland, as amended from time to time, and by federal law." Second, as we have explained, the Note included an addendum in which the parties agreed upon a prepayment penalty.

Next, there are, basically, just two legal provisions key to our discussion. First, prepayment penalties are prohibited by Md.Code (2005 Repl.Vol.), Com. Law II § 12–1009(e),[2] but that statute—as a statute—does not apply to appellee or this loan because it has been preempted by federal law. *See* 12 C.F.R. § 560.2(b)(5). Second, the applicable federal regulation governing prepayment penalties states: "Subject to the terms of the loan contract, a Federal savings association," such as appellee, "may impose a fee for any prepayment of a loan." 12 C.F.R. § 560.34.

Appellant argues that her cause of action is based in contract law, not the Commercial Law Article. She argues that the Note incorporated into the parties' agreement all of Title 12, subtitle 10 of the Commercial Law Article, including § 12–1009(e)'s proscription of prepayment penalties, converting that proscription from a public law into a term of a private agreement; appellant concedes that § 12–1009(e), as a statute, is preempted by federal law. She argues that the reference to the Commercial Law Article rendered the parties' agreement ambiguous, because it incorporated § 12–1009(e) as a contract term, while the Note also contained a prepayment penalty. Due to this ambiguity, she asserts, the trial judge erred in dismissing her complaint, because a reasonable person could conclude that the parties had agreed that the loan would not include a prepayment penalty.

Appellee offers several bases for affirmance. It presents two arguments under federal preemption principles: first, that the parties could not have incorporated § 12–1009(e) into their

---

**2.** The statute states: "In connection with any prepayment of any loan by a consumer borrower, the credit grantor may not impose any prepayment charge."

agreement, and second, that they did not incorporate that section. But most strenuously, appellee argues that there was no ambiguity in the parties' agreement: they plainly agreed to a prepayment penalty, notwithstanding the reference to the Commercial Law Article.

## STANDARD OF REVIEW

Under Maryland Rule 2–322(b)(2), a defendant may seek a dismissal on the ground that the complaint fails "to state a claim upon which relief can be granted." Md. Rule 2–322(b)(2)(2005). When moving to dismiss, a defendant is asserting that, even if the allegations of the complaint are true, the plaintiff is not entitled to relief as a matter of law. *Hrehorovich, M.D. v. Harbor Hosp. Ctr. Inc., et al.*, 93 Md. App. 772, 784, 614 A.2d 1021 (1992). Thus, in considering a motion to dismiss for failure to state a claim, the circuit court examines only the sufficiency of the pleading. *Id.* "The grant of a motion to dismiss is proper if the complaint does not disclose, on its face, a legally sufficient cause of action." *Id.* at 785, 614 A.2d 1021 (citation omitted). This Court, therefore, shall assume the truth of all well-pleaded, relevant facts as alleged in appellant's complaint and all reasonable inferences drawn therefrom. *Morris v. Osmose Wood Preserving et al.*, 340 Md. 519, 531, 667 A.2d 624 (1995) (citations omitted). Accordingly, because they were directly taken from appellant's complaint, we shall assume the truth of the facts set forth above. *Lubore v. RPM Assocs., Inc.*, 109 Md.App. 312, 322–23, 674 A.2d 547 (1996).

## LEGAL ANALYSIS

### I

We quote appellant's assignment of error as set forth in her brief:

Appellee is a federal savings bank. As a federal savings bank, it's lending activities are subject to the Home Owners Loan Act, 12 U.S.C. § 1461 et seq., ("HOLA") and its implementing regulations. Appellee convinced the trial

court that it had the right to charge the Appellant a prepayment penalty because federal law allowed it to charge such a fee. Appellant does not dispute that federal law permits inclusion of a prepayment penalty provision in a loan contract. 12 C.F.R. § 560.34 provides:

> Any prepayment on a real estate loan must be applied directly to reduce the principal balance on the loan unless the loan contract or the borrower specifies otherwise. *Subject to the terms of the loan contract,* a Federal savings association may impose a fee for any prepayment of a loan.

Where the parties part company is whether or not the parties' contract provided for a prepayment penalty because there are two conflicting provisions in the parties' contract. One provision allows a prepayment penalty. Another provision adopts Subtitle 10 of Maryland law, which prohibits prepayment penalties. 12–1009(a) and (e). "It is a basic principle of contract law that, in construing the language of a contract, ambiguities are resolved against the draftsman of the instrument." (Citation omitted.)

From the foregoing premise, she concludes:

> Appellant contends the ambiguity arises from the two conflicting provisions in regard to prepayment penalties should be construed against the Appellee. Therefore, Appellee wrongfully collected a prepayment penalty from Appellant. Therefore, the trial court erred when it dismissed the Appellant's action to recover the prepayment penalty that she paid to the Appellee.

The parties, in their briefs, discuss extensively whether § 12–1009(e), as either a statute or a contract term, is preempted by federal law. As we see it, however, this case has little to do with preemption. This is a routine contract case.[3]

---

3. Moreover, the suggestion that federal law preempts appellant's cause of action—as appellant now describes her cause of action—is feckless. According to appellant, she is pursuing a claim for breach of contract, arguing that appellee collected a prepayment penalty fee, when the

■ Appellant contends that the Note is ambiguous. Regarding contract construction, the Court of Appeals explained:

Maryland has long adhered to the objective law of contract interpretation and construction ... A court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.

*Wells v. Chevy Chase Bank, FSB,* 377 Md. 197, 224 n. 12, 832 A.2d 812 (2003). (Quoting *Taylor v. NationsBank,* 365 Md. 166, 178–79, 776 A.2d 645 (2001)). (Citations omitted.) "The test for ambiguity is whether the terms are reasonably susceptible to two or more meanings." *Metro. Life Ins. Co. v. Promenade Towers Mut. Hous. Corp.,* 84 Md.App. 702, 717, 581 A.2d 846 (1990).

The Note appellant signed stated, at paragraph 4, "BORROWER'S RIGHT TO PREPAY": "I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a 'prepayment.' When I make a prepayment, I will tell the Note Holder in writing that I am doing so." In the very next line, there appears the following instruction: " * See Addendum to Note." The addendum, of course, was the separately-signed part of the Note in

---

Note stated that none would be collected. As quoted above, the pertinent federal regulation neither prescribes nor prohibits prepayment penalties; it leaves the matter to be decided by the parties and their contract. Taking appellant's cause of action as she frames it, then, as a breach of contract case, the action is not preempted, but is simply a state law action expressly envisioned by the federal regulatory scheme. *Am. Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). The real crux of the case is identifying the terms of the contract.

which appellant expressly agreed to the prepayment penalty she now contests.

■ Applying the general principles of contract law quoted above, and as a purely intuitive, common sense matter, we do not see how a reasonable person in the borrower's shoes could have thought she was not agreeing to a prepayment penalty. Appellant contends that the agreement was rendered ambiguous by the reference to (and incorporation of) Maryland law, which prohibits prepayment penalties, and the reference to federal law, which leaves the matter up to the contracting parties. We, however, do not see either reference as equivocating on appellant's express agreement to the prepayment penalty addendum. The Note is not, as we see it, ambiguous in the least: very simply, a reasonable person signing that Note, and separately signing its addendum, could not have believed that no prepayment penalty would be collected.

■■ Assuming, *arguendo*, as appellant contends, that the contract requires interpretation, our conclusion is supported by oft-cited canons of interpretation.

There is a well-established rule of contractual construction that where two provisions of a contract are seemingly in conflict, they must, if possible, be construed to effectuate the intention of the parties as collected from the whole instrument, the subject matter of the agreement, the circumstances surrounding its execution, and its purpose and design. And, if a reconciliation can be effected by a reasonable interpretation, such interpretation should be given to the apparently repugnant provisions, rather than nullify any.

*Chew v. DeVries,* 240 Md. 216, 220–21, 213 A.2d 742 (1965) (citations omitted). Also, "[w]here two clauses or parts of a written agreement are apparently in conflict, and one is general in character and the other is specific, the specific stipulation will take precedence over the general, and control it." *Fed. Ins. Co. v. Allstate Ins. Co.,* 275 Md. 460, 472, 341 A.2d 399 (1975) (citations omitted). Properly applying these principles to the Note's prepayment addendum and general incorporation of the Commercial Law Article, one could not

reasonably conclude that appellant did not, in fact, agree to the specifically-expressed and separately-signed prepayment penalty. We could certainly end our discussion here; however, we shall address appellant's invocation of the holding in *Wells* in support of her argument that § 12–1009(e) is not preempted by federal law.

## II

Before engaging in an analysis of *Wells*, we pause to examine the reach of federal preemption under the OTS regulation.

### MARYLAND AND OTHER STATES' INTERPRETATION

As noted, *supra*, Section 12–1009(e) of the state's Commercial Law Article specifically states: "In connection with any prepayment of any loan by a consumer borrower, the credit grantor may not impose any prepayment charge." Credit grantor

> means any individual, corporation, business trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity making a loan or other extension of credit under this subtitle which is incorporated, chartered, or licensed pursuant to State or federal law, the lending operations of which are subject to supervision, examination, and regulation by a State or federal agency or which is licensed under Title 12, Subtitle 4 of the Financial Institutions Article or is a retailer.

Md.Code (2005 Repl.Vol.), Com. Law II., § 12–1001(b)(1).

A credit grantor "includes (2)(i)(a) Any bank, trust company, depository institution, or savings bank having a branch in this State...." Md.Code (2005 Repl.Vol.), Com. Law II., § 12–1001(b)(2)(i).

In contrast, the federal government, specifically, the Office of Thrift Supervision, promulgated regulations under title twelve that give the agency authority to preempt state laws concerning the regulation of fees pertaining to federal savings

and loans associations. As Judge Kenney explained in *Chaires v. Chevy Chase Bank, F.S.B.*, 131 Md.App. 64, 748 A.2d 34 (2000),

> The Code of Federal Regulations ("CFR"), 12 C.F.R. § 560.2, expressly provides that the federal regulations occupy the entire field of federal lending, and the federal regulations are to be the governing laws for certain activities, including the charging of fees, by federal institutions. Section 560.2 provides:

12 C.F.R. § 560.2 Applicability of law.

> (a) *Occupation of field.* Pursuant to sections 4(a) and 5(a) of the HOLA [Homeowners Loan Act], 12 U.S.C. §§ 1463(a), 1464(a), *OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations* when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), *OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or §§ 560.110*[4] of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

---

**4.** § 560.110 provides, in part,
  §§ 560.110 Most favored lender usury preemption.

(b) *Illustrative examples.* Except as provided in § 560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:

(1) Licensing, registration, filings, or reports by creditors;

(2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements;

(3) Loan-to-value ratios;

(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(5) *Loan-related fees, including without limitation, initial charges, late charges,* **prepayment penalties,** *servicing fees, and overlimit fees;*

---

(a) Definition. The term "interest" as used in 12 U.S.C. § 1463(g) includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees. It does not ordinarily include appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees, fees for document preparation or notarization, or fees incurred to obtain credit reports.

(b) Authority. A savings association located in a state may charge interest at the maximum rate permitted to any state-chartered or licensed lending institution by the law of that state. If state law permits different interest charges on specified classes of loans, a federal savings association making such loans is subject only to the provisions of state law relating to that class of loans that are material to the determination of the permitted interest.... Except as provided in this paragraph, the applicability of state law to Federal savings associations shall be determined in accordance with §§ 560.2 of this part. State supervisors determine the degree to which state-chartered savings associations must comply with state laws other than those imposing restrictions on interest, as defined in paragraph (a) of this section.

. . .

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

. . .

(c) *State laws that are not preempted.* State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:

(1) Contract and commercial law;

(2) Real property law;

(3) Homestead laws specified in 12 U.S.C. § 1462a(f);

(4) Tort law;

(5) Criminal law; and

(6) Any other law that OTS, upon review, finds:

(i) Furthers a vital state interest; and (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section. (Emphasis added.)

12 C.F.R. § 560.2.

To be sure, certain state laws, including contract and commercial law requirements and, perhaps most important, state real property laws, may still be effective. Under 12 C.F.R. § 560.2, however, the federal regulations expressly mandate that imposition of fees and other certain charges by federal lending institutions be governed by the federal regulations.

As the OTS stated in its promulgation ruling:

When confronted with interpretive questions under § 560.2, we anticipate that courts will, in accordance with well established principles of regulatory construction, look to the regulatory history of § 560.2 for guidance. *In this regard, OTS wishes to make clear that the purpose of paragraph (c) is to preserve the traditional infrastructure of basic state laws that undergird commercial transactions, not to open*

*the door to state regulation of lending by federal savings associations.* When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption. (Emphasis added.) 61 Fed. Reg. 50951 at page 50966 (1996).

*Chaires v. Chevy Chase Bank, FSB,* 131 Md.App. 64, 79–82, 748 A.2d 34 (2000). (Second emphasis added.)

Chief Judge Bell gave further explication on OTS and federal preemption in *Wells v. Chevy Chase Bank, FSB,* 377 Md. 197, 832 A.2d 812 (2003) in stating:

The kinds of laws preempted are illustrated in section (b), including those purporting to impose requirements regarding the terms of credit and disclosure and advertising. *See* 12 C.F.R § 560.2(b)(4) and 12 C.F.R. § 560.2(b)(9). Section (c) exempts from preemption those state laws that only incidentally affect lending operations or that are consistent with *section (a)' s purpose of "giv[ing] federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation."*

*Wells v. Chevy Chase Bank, FSB,* 377 Md. 197, 214, 832 A.2d 812 (2003). (Emphasis added.)

Given the facts of each case, the courts reached different conclusions regarding what areas were and were not preempted. In *Chaires,* we concluded federal law preempted appellants' claims that Chevy Chase imposed illegal loan fees in excess of state law under the Maryland Secondary Mortgage Loan–Credit Provisions Law. In so finding, we held that, despite appellants' assertion that Chevy Chase elected to be

governed by Maryland law in letters and loan documents, neither party could make such an election in light of 12 C.F.R. § 560.2. *Chaires*, 131 Md.App. at 85, 748 A.2d 34. In addition, for federal preemption purposes, a federal bank's subsidiaries are treated "as equivalent to the institution itself," emphasizing that if a loan originated with a subsidiary, the subsidiary is ruled by the same federal regulations that control the parent. *Id.* at 84, 748 A.2d 34.

In *Wells*, the Court held appellants' cause of action was not preempted where 12 C.F.R. § 560.2 specifically exempted incidental matters of "contract and commercial law" from preemption. *Wells*, 377 Md. at 215–16, 832 A.2d 812. Chief Judge Bell identified the critical inquiry:

> Whether the appellants' claims are preempted and whether the appellees contracted to comply with Subtitle 9 are separate and different questions, requiring different analyses. The former is a defense requiring an analysis of federal law and the determination of the impact the relationship of the parties has on the ability of that law to fulfill its intended goal. The latter involves contract interpretation, discerning the parties' intent, either actual or presumed. Contract interpretation, unlike the question of federal preemption, is a matter of state law. *Volt Info. Sciences v. Bd. of Trustees*, 489 U.S. 468, 474, 109 S.Ct. 1248, 1253, 103 L.Ed.2d 488, 497 (1989) ("the interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review"). The appellants point out accurately:

> > *Federal preemption is a defense that argues that even if plaintiffs' state law contract claims are correct—i.e. even if Chevy Chase had promised to follow "subtitle 9 of the Maryland Commercial Code" with respect to the notice it would give cardholders of amendments, and even if it broke that promise—federal law bars those claims. The contract interpretation issue, by contrast, raises the question of whether or not the language of the contract specifying Subtitle 9 requires Chevy Chase to comply with the credit card amendment provisions of Subtitle 9.*

*Wells,* 377 Md. at 224–25, 832 A.2d 812 (emphasis added and footnotes omitted).

The document at issue in *Wells* was a credit card agreement between the parties that referenced a notice requirement to Subtitle Nine of the State Commercial Law Article in the event the credit card agreement was amended. *Id.* at 200, 832 A.2d 812. The Court held, though the parties agreed the lending activities were federally regulated, the reference in the Cardholder Agreement amounted to a contractual relationship between the parties which did not fall within federal preemption, as stated under 12 C.F.R. § 560.2(c). *Wells,* 377 Md. at 231–32, 832 A.2d 812. In reversing the judgment and remanding for contract construction analysis, the Court distinguished and commented on our analysis in *Chaires* for "purporting to decide the issue on preemption grounds," but instead "decid[ing] on contract interpretation principles." *Id.* at 225, 832 A.2d 812. The Court noted our contract examination, in that we "analyzed the parties' agreement, including extraneous documents, and decided what the appellees in that case intended."[5] *Id.*

As is apparent in discussing the cases above, the ultimate decision will hinge on the facts of the case. Looking to our neighboring states, in *Toolan v. Trevose Fed. Sav. & Loan Ass'n.,* 501 Pa. 477, 462 A.2d 224 (1983), the Supreme Court of Pennsylvania held prepayment penalties associated with a residential mortgage was solely under the authority of the Federal Home Loan Bank Board, the predecessor to OTS, and regulations 12 C.F.R. § 545.8–5(b) and 12 C.F.R. § 555.15.[6] *Toolan,* 501 Pa. at 484, 462 A.2d at 227. As such, Pennsylvania law that prohibited prepayment penalties was preempted.

---

**5.** Judge Raker issued a dissent following *Chaires,* and opining all appellants' claims in *Wells* were preempted by federal law.

**6.** 12 C.F.R. § 545.8–5(b) provides:
(b) Loan payments and prepayments.
Payments on the principal indebtedness of all loans on real estate shall be applied directly to reduction of such indebtedness, but

*Toolan,* 501 Pa. at 484, 462 A.2d at 227. Also, in the federal Fourth Circuit, examining Virginia law in *Nat'l Home Equity Mortgage Ass'n. v. Face,* 239 F.3d 633 (4th Cir.2001), in relation to the Alternative Mortgage Transaction Parity Act of 1982, the court determined non-federally chartered housing creditors within the state of Virginia, could elect to have their Alternative Mortgage Transactions, or AMTs, governed by federal law. *Face,* 239 F.3d at 635–36. In the event that these housing creditors opted to have their AMTs governed by federal law, federal law imposing prepayment penalties preempted Virginia statutes that restricted the imposition of such penalties. *Id.* at 639.[7]

---

prepayments made on an installment loan may be reapplied from time to time wholly or partly to offset payments which subsequently accrue under the loan contract. A borrower on a loan secured by a home or combination of home and business property may prepay the loan without penalty unless the loan contract expressly provides for a prepayment penalty. The prepayment penalty for a loan secured by a home occupied or to be occupied in whole or in part by a borrower shall not be more than 6 months' advance interest on that part of the aggregate amount of all prepayments made on such loan in any 12 month period which exceeds 20 percent of the original principal amount of the loan.

12 C.F.R. § 555.15 provides:

§ 555.15 Prepayment penalty on mortgage loans.

Section 548.8–5(b) makes clear that charging a prepayment penalty is a matter of contract between a Federal association and a borrower, and that the borrower may wholly or partly prepay the loan without penalty unless the loan contract contains an express provision imposing a prepayment penalty. Section 545.8–5(b) also authorizes a Federal association to include a provision in its loan contract with a borrower (who occupies or will occupy the home securing the mortgage loan) imposing a prepayment penalty at any amount up to, but not exceeding, a specified limit. Thus, in view of the controlling Federal regulation, a Federal association may include a prepayment provision in the loan contract up to the maximum limitation of § 545.8–5(b) regardless of conflicting State law which sets a lower limit or imposes a different type of prepayment penalty, but it may not charge a prepayment penalty exceeding the limit in § 545.8–5(b) even if State law allows a higher charge.

*Toolan v. Trevose Federal Sav. & Loan Ass'n,* 501 Pa. 477, 482, 462 A.2d 224, 226 (1983).

7. Notably, Attorney General Curran issued an opinion in 1997, predating *Face,* whereby he set forth the same conclusion reached by the

Despite a different set of facts, the U.S. District Court for the District of Maryland upheld federal law preemption in *Nat. City Bank of Indiana et al., v. Turnbaugh,* 367 F.Supp.2d 805 (D.Md.2005). The District Court found that national banks and the bank subsidiaries, operate under the authority of the federal Office of the Comptroller of the Currency. *Turnbaugh,* 367 F.Supp.2d at 812. Consequently, Maryland law that limits the terms on which mortgage lenders can impose prepayment penalties under § 12–105(b)(4) is preempted by federal laws calling for prepayment fees, even if a national bank subsidiary is headquartered in Maryland. *Id.* at 813–14.

## EXEMPTIONS FROM FEDERAL PREEMPTION

There are fact-specific cases in which the courts have found state law is exempted from federal law preemption. In the District Court for the District of Maryland, in *McKenzie v. Ocwen Federal Bank FSB,* 306 F.Supp.2d 543 (D.Md.2004), the borrower filed a class action in state court challenging the national bank's imposition of fees and charges related to inspection. *McKenzie,* 306 F.Supp.2d at 544. The court held the plaintiffs' action was to be remanded to state court because the federal Homeowner's Loan Act did not completely preempt plaintiffs' claim, insofar as the fees at issue were inspection fees, and not fees related to the loan, i.e. late charges, prepayment penalties, overlimit fees. *Id.* at 545–46.

In *Livingston v. Vanguard F.S.B.,* 386 Pa.Super. 496, 563 A.2d 175 (1989), the Superior Court of Pennsylvania considered whether the Pennsylvania statute that prohibited prepayment fees on home loans would apply or be preempted if the document at issue was a mobile home installment contract. *Livingston,* 386 Pa.Super. at 499, 563 A.2d at 176. The court held that loans referred to in federal regulations pertaining to home loans did not specifically include mobile home sales or

---

U.S. Court of Appeals, concluding all Commercial Law sections which limit the charging of prepayment penalties were preempted and do not apply to AMTs in Maryland. 82 Op. (Att'y.) Gen. 77 (1997).

lending. *Id.,* 386 Pa.Super. at 504, 563 A.2d at 179. There-
fore, the court determined the Pennsylvania prepayment fee
statute was not preempted by federal law when applied to an
installment contract for a mobile home. *Id.,* 386 Pa.Super. at
505, 563 A.2d 175, 180.

### III

Appellant's reliance on *Wells, supra,* is misplaced. In that
case, Wells argued, as does appellant, that the parties' refer-
ence to Maryland law, in the choice-of-law clause of his credit
card agreement, incorporated Maryland's statutory provisions
into the agreement, and Wells subsequently brought a breach
of contract action against the Bank. *Wells,* 377 Md. at 199–200,
832 A.2d 812. In its defense, the Bank argued that the cause
of action was preempted by federal law. *Id.* at 207–08, 832
A.2d 812. The Court of Appeals defined the issue as "whether
the cause of action, or at least the basis for the claimed
breach, is preempted." *Id.* at 215, 832 A.2d 812. The Court
did not decide whether, by virtue of the reference to State law,
the parties' agreement was rendered ambiguous, which is
precisely the issue appellant has put before us. *Id.* at 231–32,
832 A.2d 812. Although the *Wells* Court declined to address
that issue, we have no hesitation in agreeing with the circuit
court that appellant unambiguously agreed to the prepayment
penalty, rendering the preemption arguments of the parties
inapplicable to the case at hand.

In conclusion, the short answer to appellant's argument that
C.L. § 12–1009(e) is not preempted is contained in 12 C.F.R.
§ 560.34 which provides, *inter alia, "Subject to the terms of
the loan contract,* a Federal savings association may impose a
fee for any prepayment of a loan." As we have concluded,
*supra,* appellant agreed to an express term of the loan con-
tract. Assuming, *arguendo,* that the facts of the case had
required that we resolve a conflict between C.L. § 12–1009(e)
and 12 C.F.R. § 560.34, we would be guided by the instruc-
tions of OTS when promulgating § 560.2, *i.e.,* "[t]he first step
will be to determine whether the type of law in question is
listed in paragraph (b). If so, the analysis will end there; the

law is preempted." Listed as one of the "Illustrative Examples" under (b) of § 560.2 is "(5) Loan related fees, including without limitation, initial charges, *prepayment penalties,* servicing fees, and overlimit fees."

Notably, under § (c), captioned, "State laws that are not preempted," the Regulation specifically provides that certain state laws are not preempted "to the extent that they only incidentally affect the lending operations of Federal savings associates or are otherwise consistent with the purposes of paragraph (a) of this section." Included in this list are Contract and commercial law, Real property law, specific Homestead laws, Criminal law and other laws that OTS deems "further a vital state interests and only have an incidental effect on lending operations or are not otherwise contrary to the purposes expressed in paragraph (a)." Patently, prepayment penalties are expressly included in the list of state laws preempted by 12 C.F.R. § 560.2, but are not included in the list of state laws that are not exempted.

The *Wells* Court, in an exhaustive review of prior decisions which have considered the applicability of federal preemption, recognized the distinction drawn by the OTS between state laws subject to preemption and those which are not preempted [8].

---

**8.** The Court, in drawing the distinction, explained:

The issue that must be resolved, therefore, is whether the cause of action, or at least, the basis for the claimed breach, is preempted.

The cause of action is not preempted. The OTS regulations expressly exempt from preemption "contract and commercial law ... that ... only incidentally affect[s] the lending operations of Federal savings associations or [is] otherwise consistent with" the purpose of the regulations. 12 C.F.R. § 560.2(c). That intention was confirmed in 61 Fed.Reg. at 50966: "OTS wants to make clear that *it does not intend to preempt basic state laws such as state uniform commercial codes and state laws governing real property, contracts [or] torts.* ..." See also *Derenco, Inc. v. Benjamin Franklin Federal Savings & Loan Ass'n,* 281 Or. 533, 577 P.2d 477, 481–88, *cert. denied,* 439 U.S. 1051, 99 S.Ct. 733, 58 L.Ed.2d 712 (1978) (applying state common-law restitutionary principles to loan-related activities of federal lenders); *Fenning v. Glenfed, Inc.,* 40 Cal.App.4th 1285, 1295–99, 47 Cal.Rptr.2d 715 (1995), *review denied,* 1996 Cal. LEXIS 1870 (1996) (suit against a federal thrift for fraud and unfair business practices not preempted by HOLA nor its

From the foregoing, notwithstanding that the parties present the instant case as a question of federal preemption, it is properly resolved as a matter of contract law. Simply put, appellant agreed, at the inception of the loan transaction, to pay a prepayment penalty should she decide to pay off the loan within five years. Assuming appellant was not in a position to negotiate a mortgage that did not contain a provision for a prepayment penalty, her only recourse was to seek financing elsewhere.

---

implementing regulations); *People ex rel Sepulveda v. Highland Federal Savings & Loan,* 14 Cal.App.4th 1692, 1708, 19 Cal.Rptr.2d 555, *cert. denied, sub nom.*

*Highland Fed. Sav. & Loan Ass'n v. California,* 510 U.S. 928, 114 S.Ct. 338, 126 L.Ed.2d 282 510 U.S. 928, (1993) ("we have found no provision of HOLA nor any particular regulation, and none have been cited to us, which expressly preempt the statutory action by the People for unfair business practices and the causes of action by the tenant plaintiffs for fraud, RICO violations, etc."); *Siegel v. American Savings & Loan Ass'n,* 210 Cal.App.3d 953, 258 Cal.Rptr. 746, 748–53 (1989) (suit based on a variety of state-law claims, including unfair competition, breach of contract, and breach of agency duty, permitted against federal lender); *Konynenbelt v. Flagstar Bank,* 242 Mich.App. 21, 617 N.W.2d 706, 712–14 (2000) (HOLA does not preempt common-law tort and contract claims); *Flanagan v. Germania, F.A.,* 872 F.2d 231, 234 (8th Cir.1989) (claim for tortious interference with contract not preempted by HOLA); *Tuxedo Beach Club Corp. v. City Federal Savings Bank,* 749 F.Supp. 635, 648 (D.N.J.1990) (private right of action under state consumer protection law not preempted by HOLA);. *Morse v. Mutual Federal Savings & Loan of Whitman,* 536 F.Supp. 1271, 1280–81 (D.Mass.1982) ("[t]he fact that federal statutes or regulations covering some aspects of a regulated area are, by necessity, complex and detailed, does not imply that Congress intended to occupy the entire field to the exclusion of state law").

Nor is a federal lender's contractual undertakings preempted. The OTS regulations indicate that OTS "occupies the entire field of lending regulations for federal savings associations." In that regard, they provide that, consistent with OTS's intent "to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation," a federal savings association may extend credit as authorized under federal law ... without regard to state laws purporting to regulate or otherwise affect their credit activities. *Thus, the regulations apply only to State law, which they define as including "any state statutory regulation, ruling order or judicial decision."* § 560.2(a). *See* 61 Fed.Reg. 50591 at 10 ("the terms of the ... loan should be a matter of contract between the savings association and the purchaser").

*Wells,* 377 Md. at 215–217, 832 A.2d 812 (emphasis added).

**JUDGMENTS OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**